### CHAN CHAUN v. UNITED STATES.
### No. 10525.

Circuit Court of Appeals, Ninth Circuit.

Aug. 15, 1944.

Rehearing Denied Sept. 29, 1944.

Walter H. Duane and James B. O'Connor, both of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and James T. Davis, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Two indictments, each charging the concealment and the facilitation of the concealment of narcotics, were returned against appellant. The indictments were consolidated and appellant was convicted under both. The sole question raised on the appeal is the sufficiency of the evidence to support the verdicts.

1. The first indictment has to do with a large quantity of smoking opium found in tins in a suitcase which had been checked as baggage at Portland for transportation to San Francisco via a Greyhound bus. The opium was discovered en route in the course of a routine inspection conducted by California quarantine officers at the state line. Farther on, at Davis, the tins were removed from the suitcase by agents of the narcotic bureau. Upon arrival of the bus at San Francisco the suitcase was placed in the baggage room and several days later was called for by a truck driver who presented the requisite check. The driver then delivered the bag to a building on Grant Avenue occupied by appellant and others. Possession of the check was traced back to appellant, and it was shown on the trial that he had given directions to the transfer people to pick up the baggage. In explanation of his possession appellant testified that the baggage check had been turned over to him by one Wong who asked him to have the suitcase picked up as an accommodation. Wong was no further identified by appellant than as a man he had met casually at a tong party and as having reputedly come from Portland to buy goods. There was evidence that appellant had been in the vicinity of Portland about the time of the departure of the bus in which the suitcase was transported. It was shown that one need only

purchase a passenger ticket in order to check baggage on the bus.

We think the showing of these circumstances was sufficient to support the conviction.

2. The second indictment was a by-product of the investigation relating to the suitcase.

The Grant Avenue place mentioned above was a four-story building occupied by appellant and several other Chinese, partners in an importing and exporting business. Appellant and one or more of the other partners lived on the premises. The top floor or loft of the building had a room at the street end, separated from the remainder of the floor by a wooden partition. This room was appellant's living quarters. At the rear of the same floor was a kitchen in charge of Pon Jeung, a cook employed by the occupants. At the time of the delivery of the suitcase the narcotic agents, accompanied by several policemen, searched this floor after seeing some empty opium jars on an exposed shelf. They found jars of opium, yen shee, and smoking apparatus concealed in the kitchen, and thereupon questioned the cook in the presence of appellant. The cook, so several of the officers testified, was asked to whom the opium and smoking paraphernalia belonged and he replied that they belonged to appellant. The latter, it was testified, stood mute, neither affirming nor denying the cook's statement. The conversation with the cook was in English.

On the trial Pon Jeung was called as a witness by the government. He testified through the medium of an interpreter, professing his inability to speak or understand English. He denied having said that the opium belonged to appellant and denied knowing who was responsible for its presence in the kitchen. Appellant, testifying through an interpreter, likewise protested his inability to speak or understand English, and denied that the opium and other articles were his. However, a police inspector and other policemen of long experience and service in Chinatown testified to their having had conversations in English both with appellant and with Pon Jeung on the day in question.

█ Obviously this showing was weak, but we are not prepared to hold it insufficient. In the circumstances, appellant's silence in the face of the cook's declaration might reasonably be taken as a tacit admission of guilt. It was for the jury to decide whether the incident occurred and, if so, whether these two Chinese possessed an adequate knowledge of the language. It may appropriately be added that, save for a small fine, the sentence under this indictment was made to run concurrently with that imposed under the other.

Affirmed.